IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


LEVORA ACQUE,

      Plaintiff,

v.                                                  1:20-cv-00464-DHU-LF

XAVIER BECERRA[1]
SECRETARY OF THE U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

For several years Plaintiff Levora Acque worked as an inventory management specialist at the Gallup Regional Supply Services Center ("GRSSC"). She brought this action against Defendant Xavier Becerra, Secretary of the Department of Health and Human Services, ("the Secretary" or "Defendant"), claiming that the Secretary discriminated and subjected her to a hostile work environment in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because of her race and national origin as a member of the Zuni Pueblo. The Secretary moved for summary judgment to dismiss Plaintiff's complaint in its entirety (Doc. 28). Invoking the familiar *McDonnell Douglas*[2] burden-shifting framework, the Secretary argues that Plaintiff cannot establish a prima facie case of either discrimination or hostile work environment under

---

[1] When the complaint was initially filed, Alex Azar was Secretary of the U.S. Department of Health and Human Services. Defendant has substituted Xavier Becerra, the current Secretary of the U.S. Department of Health and Human Services, for Alex Azar according to Federal Rule of Civil Procedure 25(d). *See* Def.'s Mot., Doc. 28, n.1.

[2] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Title VII, and that even if she could, the Secretary had legitimate, nondiscriminatory reasons for its employment actions. After carefully considering the motion, briefs, submissions of the parties, and relevant law, the Court GRANTS the motion and enters summary judgment for the Secretary.

### Factual and Procedural Background

The following facts are either undisputed or construed in the light most favorable to Plaintiff as the summary judgment nonmovant. Plaintiff is a member of the Zuni Pueblo. Def.'s UMF ¶ 37, Doc. 28.[3] Plaintiff has been a supervisory inventory management specialist (GS-11) at the GRSCC since February 2013. *Id.* at ¶ 1. Plaintiff is the only supervisory inventory management specialist at GRSSC. *Id.* at ¶ 2. Shelia Silva, the GRSSC director (GS-13) and supply management officer, is Plaintiff's first-level supervisor. *Id.* at ¶ 3. Ms. Silva is of a diverse background, including Anglo, African American, Mexican, Navajo, and Hopi Indian. *Id.* at ¶ 4. The GRSCC had 24 employees. *Id.* at ¶ 38. Three employees identified as mixed race, 14 identified as Navajo, three identify as Zuni, and four employees did not report their race.

On January 29, 2016, Ms. Silva issued Plaintiff a Letter of Official Reprimand for walking out of a supervisor meeting.[4] *Id.* at ¶ 8; Def.'s Ex. 6, Doc. 28-6. According to Ms. Silva's reprimand

---

[3] The Court finds as "Undisputed Material Facts" those facts that the Secretary set out in his motion, to which Plaintiff either admitted in her response or failed to dispute with evidentiary support. *See* D.N.M. LR-Civ. 56.1(b). The summary judgment record in this case consists primarily of affidavits by Plaintiff and other witnesses that were made during an Equal Employment Opportunity ("EEO") investigation. The record also includes emails, letters, EEO documents, and other evidence. The Court construes the evidentiary record in the light most favorable to Plaintiff as the summary judgment nonmovant. *See EFLO Energy v. Devon Energy Corp.*, 66 F.4th 775, 787 (10th Cir. 2023) (on a motion for summary judgment, the court must "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party.") (citation and quotation marks omitted).

[4] Plaintiff has generated confusion by listing different dates the Letter of Official Reprimand was issued. In her administrative and federal complaints, she identified the date of the reprimand as August 3, 2017. However, the letter itself is dated January 29, 2016 and Plaintiff's EEO affidavit referenced January 29, 2016 as the date of the reprimand letter. In addition, Plaintiff's summary

letter, problems began when Plaintiff told her staff (purchasing department employees) to not speak to warehouse staff members. *See id*. In response, Ms. Silva called a supervisor meeting. *See id*. During the meeting, Ms. Silva yelled at Plaintiff. Def.'s Ex. 1 at 4, Doc. 28-1. Plaintiff told Ms. Silva, "I'm not going to go through this with you," walked out of the meeting, and told Ms. Silva, "I'm going to call your supervisor," prompting Ms. Silva to write the Letter of Official Reprimand. Def.'s Ex. 6, Doc. 28-6.

About a month later, on February 20, 2016, Plaintiff filed a formal Equal Employment Opportunity complaint regarding the Letter of Official Reprimand. Def.'s UMF at ¶ 9. Later, the EEO complaint was withdrawn, and the matter was officially closed on June 8, 2016. *Id.* Despite the apparent tension between Ms. Silva and Plaintiff, Ms. Silva nevertheless gave Plaintiff an "Outstanding Results" work rating on Plaintiff's 2016 Performance Plan. *Id*. at ¶ 10; Def.'s Ex. 8, Doc. 28-8.

In April 2017, Plaintiff was serving as acting director in Ms. Silva's absence. Pl.'s AUMF, ¶ 4, Doc. 32; Def.'s UMF at ¶ 13. During this period, Ms. Silva accused Plaintiff of micromanaging staff after Plaintiff reported that a man was whistling at women in the warehouse and that another employee was in the warehouse when she should not have been there. Def.'s Ex. 3, Doc. 28-3 at 5; Def.'s Ex. 1 at 6, Doc. 28-1. Also during this period, Plaintiff commented that staff in the purchasing department were "playing around" and delaying orders. Pl.'s Ex. A, Doc. 32-1, 3. In response, all questions regarding purchasers would go through Ms. Silva. Def.'s Ex. 10, Doc. 28-

---

judgment response stated that she "received [the letter] on January 29, 2016," Doc. 32. She also did not dispute the Secretary's material fact that "[o]n January 29, 2016, Ms. Silva issued Plaintiff a Letter of Official Reprimand" and that Plaintiff "acknowledged receipt of the letter by signing it on January 29, 2016." Def.'s UMF at ¶ 8, Doc. 28. Given that at least four sources – the letter itself, Plaintiff's EEO affidavit, Plaintiff's response, and the Secretary's undisputed material fact – indicate that the reprimand letter was issued on January 29, 2016, the Court treats that date as the date of the reprimand.

10, 1. Ms. Silva's control over communications damaged Plaintiff's positive working relationship with the purchasing and inventory departments. *See* Pl.'s Ex. A, Doc. 32-1 at 3.

Over a more than two-year period beginning in March of 2015 through May of 2017, Ms. Silva sent Plaintiff emails telling Plaintiff to not "go into the warehouse," to not "communicate with anyone in the warehouse" unless it was by email, and to "only talk with [Plaintiff's] own staff in [her] department." Def.'s Ex. 1, Doc. 28-1 at 9. In at least one of these instances–the March 2015 email–Plaintiff was merely trying to figure out the status of flu test kits that had been left in the warehouse. *See id*. at 8.

On April 25, 2017, Ms. Silva called staff into the receiving area of the warehouse for a meeting. *See* Def.'s Ex. 1, at 10, Doc. 28-1. She congratulated purchasing department employees on their work but told warehouse department employees to eliminate mistakes. *See id.* Ms. Silva also brought up Plaintiff's report about the man whistling, saying the report could have been perceived as sexual harassment. *See id.* Ms. Silva then asked staff "who they worked for," asked them "who is going to terminate you" and said that she was not going to be fired because she was a "GS-13 Director." *Id*. Ms. Silva then looked around at the staff and said, "I know you guys want me dead, I am not going anywhere, you guys can witch me all you want, it isn't going to work, and I'm a veteran." *Id*. Plaintiff was offended because in Zuni culture witchcraft is a taboo topic. *See id*. Ms. Silva denied making these remarks. *See* Def.'s Ex. 3, Doc. 28-3, 8. According to Ms. Silva, she was trying to convey that layoffs would be coming if they lost customers. *See id*.

On May 23, 2017, Ms. Silva issued Plaintiff a Letter of Expectation. *See* Def.'s Ex. 11, 1, Doc. 28-11. According to Ms. Silva's letter, Plaintiff made three combative responses and refused to follow instructions. *See id.* The letter set forth several expectations going forward and warned that more severe disciplinary action, including termination, could result if Plaintiff did not follow

4

those expectations. *See id*. When Plaintiff asked Ms. Silva to explain the letter, Ms. Silva "smirked" and told Plaintiff that "people were complaining" and that Plaintiff "couldn't talk to people." *Id*. Ms. Silva eventually left the office in a fit when Plaintiff asked for an explanation. *Id.* Plaintiff did not sign the letter. *Id*.

Plaintiff highlights instances when Ms. Silva took actions that interfered with Plaintiff's job performance. In June 2017, for example, Ms. Silva denied Plaintiff permission reorganize the filing system for catheters, even though updating files was an element of Plaintiff's job performance rating. *See* Def.'s Ex. 1, 14, Doc. 28-1. On another occasion Ms. Silva denied Plaintiff's request to go to Shiprock, New Mexico even though another person, Donna Perez, already approved Plaintiff to work there. Pl.'s Ex. A. at 5, Doc. 32-1. According to Plaintiff, Ms. Silva falsely claimed that Ms. Perez denied Plaintiff's request to work in Shiprock when it was truly Ms. Silva who denied the request. In addition, Ms. Silva's actions "denied [Plaintiff's] time to complete the project." *Id*. And on July 11, 2017, Ms. Silva denied Plaintiff's request to work overtime at the Gallup Indian Medical Center ("GIMC") so that Plaintiff was unable able to fulfill one of the elements of her 2017 Performance Evaluation. *See id*. at 7. Because of Ms. Silva's denial of the overtime request, Plaintiff's "GIMC project [was] incomplete." *Id*.

During this same period, a wall was built between Plaintiff's department and the purchasing department. *See id.* "The purpose of the wall was to keep [Plaintiff's] department from bothering the purchasing agents so [the purchasing agents] c[ould] do their work as they complained about [Plaintiff] and another employee asking for purchase orders." *Id*. Ms. Silva gave shifting explanations for the wall's construction: first she told Plaintiff it was constructed because Plaintiff complained about loud noise but then she told Plaintiff that it was built to separate confidential records. *See id*. However, Defendant submitted an uncontradicted affidavit from a

contract specialist who stated that the wall was built to separate records because the agency had prior reports of certain records that went missing. *See* Def.'s Ex. 12, 4, Doc. 28-12.

In July 2017, Plaintiff requested three hours of leave time to meet with an EEO investigator. *See* Def.'s Ex. 1 at 19, Doc. 28-1. Plaintiff did not want to tell Ms. Silva about the meeting, so she described her request for leave time as "work related." *Id*. In response, Ms. Silva emailed Plaintiff and demanded to be informed "each time [Plaintiff] le[ft] the building," whom Plaintiff met, and the time of the meeting. *Id*. Because Plaintiff described her request for leave time as "work related," *id*., Ms. Silva "requested to know the nature of the work." Def.'s UMF at ¶ 28.

On August 15, 2017, Plaintiff requested a meeting with her second-line supervisor, Dee Hutchinson. *See* Def.'s Ex. 1 at 20, Doc. 28-1. According to Ms. Hutchinson's affidavit, she could not recall Plaintiff reporting harassment during that meeting. *See* Def.'s Ex. 4, 4, Doc. 28-4. Plaintiff's affidavit, however, indicated that the meeting never occurred, and that management ignored her reports of harassment. *See* Def.'s Ex. 1 at 12, Doc. 28-1.

Plaintiff avers that her national origin was a factor in her disparate treatment and hostile work environment claims because she is Zuni and most of the staff is Navajo. Doc. 32 at ¶ 2. For example, Plaintiff states that Ms. Silva directed supervisors to not talk to staff members in other departments, yet two male Navajo supervisors were never limited to working with staff members in their own departments. Pl.'s Ex. A at 9, Doc. 32-1. Plaintiff also seems to support her assertion that Navajo employees were treated better because Ms. Silva called one of the Navajo employees "Sunshine" and treated the Navajo employees nicer. *Id*.

On July 19, 2017, Plaintiff contacted the EEO. On September 21, 2017, Plaintiff filed a formal EEO complaint of discrimination against the Indian Health Services of the Department of Health and Human Services. In January 2020, an EEOC Administrative Judge granted summary

6

judgment in favor of the Secretary and issued a Final Order on February 12, 2020. On May 13, 2020, Plaintiff filed her federal Title VII complaint in this Court. The complaint asserts two causes of action for: (1) disparate treatment discrimination based on national origin or race and (2) a hostile work environment claim.

The Secretary has moved for summary judgment on all claims, which the Court proceeds to analyze below.

**Legal Standard**

"Summary judgment must be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Sec. & Exch. Comm'n v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022) (citation and internal quotation marks omitted). "A fact is material if it can have an impact on the outcome of the lawsuit and genuine if a rational jury could find in favor of the non-moving party based on the evidence presented." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171 (10th Cir. 2021). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

"[O]nce the movant has made a showing that there is no genuine dispute of material fact, the non-moving party must make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *GenAudio Inc.*, 32 F.4th at 920 (citation and internal quotation marks omitted). "For dispositive issues on which the [nonmovant] will bear the burden of proof at trial, [the nonmovant] must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Id.*

(citation omitted) (alterations in original). "[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation and quotation marks omitted).

## Discussion

The Court addresses in turn the Secretary's motion for summary judgment on Plaintiff's claims of (1) discrimination based on disparate treatment and (2) hostile work environment.

### 1. Summary Judgment is Granted to the Secretary on Plaintiff's Claim for Discrimination Because Plaintiff Was Not Subjected to An Adverse Employment Action

"Title VII prohibits employment discrimination based on 'race, color, religion, sex, or national origin.'" *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). Plaintiff has asserted a Title VII claim under a "disparate treatment" theory, which "embodies a situation where the employer simply treats some people less favorably than others because of their race, color, religion or national origin." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation, brackets, and internal quotation marks omitted). To succeed, a plaintiff "must prove that *intent* to discriminate *based upon* [the] plaintiff's protected class characteristics was the determining factor for the allegedly illegal employment decision." *Ford*, 45 F.4th at 1213 (citation and quotation marks omitted) (emphasis in original).

In Title VII cases, a plaintiff can survive summary judgment by providing either direct evidence or circumstantial evidence. *Crowe v. ADT Sec. Servs. Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). "Under *McDonnell Douglas*, a three-step analysis requires the plaintiff first prove a prima facie case of discrimination." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir.

2012) (citation omitted). "For a claim of race … discrimination, a prima facie case requires evidence that: (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Ford*, 45 F.4th at 1215 (citation omitted). The burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *Khalik*, 671 F.3d at 1192. If the defendant does so, the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext. *Id.*

There is no dispute that Plaintiff is a member of a protected class. The Court therefore moves to the second element of Plaintiff's prima facie case, whether she suffered an adverse employment action. *See Ford*, 45 F.4th at 1215. Plaintiff's judicial complaint identifies only one adverse action: the January 29, 2016 Letter of Official Reprimand that Ms. Silva issued after Ms. Silva yelled at Plaintiff during a meeting, prompting Plaintiff to walk out. Before reaching the merits of whether the reprimand letter amounted to an adverse action, the Court must first determine whether Plaintiff may rely on the letter to support her claim of discrimination. The Secretary argues that Plaintiff may not rely on the letter because she failed to contact an EEO counselor within 45-days of the alleged adverse personnel action—here, the January 29, 2016 reprimand letter—as required by 29 C.F.R. § 1614.105(a), and therefore failed to exhaust remedies.

Federal employees alleging discrimination prohibited by Title VII "must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (citation omitted). As the Supreme Court has explained, "[b]efore a federal civil servant can sue his employer for violating Title VII, he

must, among other things, 'initiate contact' with an Equal Employment Opportunity counselor at his agency 'within 45 days of the date of the matter alleged to be discriminatory.'" *Green v. Brennan*, 578 U.S. 547, 549–50 (2016) (quoting 29 CFR § 1614.105(a)(1)).[5] This regulatory exhaustion requirement, however, "is not a jurisdictional prerequisite for suit but is a claims-processing rule that the employer may raise as an affirmative defense." *Hickey*, 969 F.3d at 1118 (citation omitted). "It is accordingly subject to the same waiver and estoppel principles that govern other affirmative defenses." *Id.*

Plaintiff received the reprimand letter on January 29, 2016. She filed an initial EEO complaint on February 20, 2016, but then withdrew it, and the matter was officially closed on June 8, 2016. Plaintiff's second contact with the EEO was not until July 19, 2017, well past the 45-day deadline for initiating contact to report discrimination. Plaintiff did not explain the effect of her first complaint in these proceedings. Her only argument to the Secretary's exhaustion argument is that "[t]he hostile work environment involved ongoing harassment that continued until she complained to the EEOC Counselor," even though this appears to be an argument directed at Count II, her hostile work environment claim. Doc. 32 at 11. It therefore appears that Plaintiff did not timely exhaust her claim based on the reprimand letter.

---

[5] The pertinent regulation states that:

(a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1).

Even assuming, *arguendo*, that Plaintiff timely exhausted her claim based on the reprimand letter, Plaintiff's evidence fails to raise a genuine issue of fact that the letter constituted an adverse employment action, and therefore she cannot establish a prima facie case of discrimination. To constitute an "adverse action" "the employer's conduct must be 'materially adverse' to the employee's job status." *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003). "For discrimination claims, an adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (citation and brackets omitted). "Although the Tenth Circuit liberally defines an 'adverse employment action,' its existence is determined on a case by case basis and does not extend to a mere inconvenience or an alteration of job responsibilities." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005).

"Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action." *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005). "A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment ...." *Id.*; (quoting *Haynes v. Level 3 Commc'ns., LLC,* 456 F.3d 1215, 1224 (10th Cir. 2006)) (emphasis in original). For example, a written reprimand may be an adverse employment action "if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *Medina*, 413 F.3d at 1137. *See, e.g., Hillig v. Rumsfeld*, 381 F.3d 1028, 1035 (10th Cir. 2004) (concluding that negative references of plaintiff constituted adverse employment actions because the references "seriously harmed" the plaintiff's future employment); *Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1104 (10th Cir. 1998)

(employer's issuance of twenty written warnings to the plaintiff over a two-year period constituted an adverse employment action because "the more warnings an employee received, the more likely he or she was to be terminated for a further infraction.")

Here, a reasonable jury could not conclude that the January 29, 2016 reprimand letter was an adverse action. Simply put, Plaintiff submitted no evidence that the reprimand letter resulted in a change of her employment status such as a demotion, altered pay, changed responsibilities, or that the letter harmed her prospective employment.[6] Instead, her facts resemble cases where the Tenth Circuit has held that written warnings or reprimands did not constitute an adverse action. *See, e.g., Anderson v. Clovis Mun. Sch.*, 265 F. App'x 699, 704–05 (10th Cir. 2008) (written reprimand admonishing teacher to improve his classroom management skills did not constitute an adverse employment action because it "did not serve as a demotion, alter his pay, or change his responsibilities in any significant manner."); *Haynes*, 456 F.3d at 1224-25 (plaintiff's placement on a written improvement plan was not an adverse action because "[s]he was not demoted, her pay did not change and her responsibilities were not significantly modified."); *Medina*, 413 F.3d at 1137 (warning letter was not an adverse action because the plaintiff had already relocated to another job when the letter was issued, the letter was not placed in the employee's personnel file,

---

[6] In her summary judgment response, Plaintiff makes a passing reference to being demoted, which could be an adverse employment action. However, Plaintiff provided no record citation to support this assertion. Under the Federal Rules of Civil Procedure, "[a] party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record...." Fed. R. Civ. P. 56(c)(1)(A). Plaintiff has failed to do so. And although the Court is not obligated to "conduct it is own search of the record," in these circumstances, the Court's own careful and thorough review of the summary judgment record reveals no evidence supporting this assertion. *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (ellipsis and internal quotation marks omitted).

and there was no evidence that the letter was discoverable by a prospective employer).[7] Plaintiff has submitted no evidence that the January 29, 2016 reprimand letter resulted in a change of Plaintiff's employment status such as a demotion, altered pay, changed responsibilities, or that the letter harmed Plaintiff's future employment options. A reasonable jury therefore could not conclude that the letter was an adverse employment action.

Because Plaintiff has failed to establish a prima facie case of discrimination, the Secretary's motion for summary judgment on Count I of Plaintiff's complaint is granted.

### 2. Summary Judgment is Granted to the Secretary on Plaintiff's Hostile Work Environment Claim

The Secretary next moves for summary judgment on Count II, Plaintiff's hostile work environment claim. "Although hostile work environment is not explicitly mentioned in Title VII," *Bolden v. PRC Inc.*, 43 F.3d 545, 550 (10th Cir. 1994), the Act encompasses "an employee's claims of a hostile work environment based on race or national origin discrimination." *Herrera v. Lufkin Indus., Inc.,* 474 F.3d 675, 680 (10th Cir. 2007). Title VII, however, "does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs,* 666 F.3d 654, 663–64 (10th Cir. 2012) (internal quotation marks and citations omitted). Courts therefore should "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language

---

[7] *See also E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (questioning whether a written warning was an adverse action but ultimately declining to address the issue because the employer conceded that the letter was an adverse action "despite this Circuit's rule that a written warning is an adverse employment action *only* if it effects a significant change in the plaintiff's employment status[.]") (emphasis in original).

… and occasional teasing" from meritorious Title VII hostile work environment claims. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

"[T]o avoid summary judgment at the prima facie stage, a plaintiff must present evidence that creates a genuine dispute of material fact as to whether the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (citation, quotation marks, brackets omitted). A prima facie claim of hostile work environment requires the plaintiff to prove (1) that she belonged to a protected class, (2) that she suffered unwelcome harassment, (3) that the harassment was based on national origin, and (4) that the harassment was so severe or pervasive that it "altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."[8] *Id.* (citation omitted). "The harassment must be racial or stem from racial animus." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008) (citation, quotation marks, brackets omitted).

"'[There] is not, and by its nature cannot be, a mathematically precise test' for a hostile work environment claim." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (quoting *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 22 (1993)). "Courts determine whether an environment is hostile or abusive by looking at such factors as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 957-58 (quoting *Harris*, 510 U.S. at 23). "[T]he pervasiveness of the hostility is quintessentially a

---

[8] The Tenth Circuit has stated elsewhere that "[t]his four-part claim can be broken down into two requirements: (1) evidence of harassment based on national origin and (2) evidence of severity or pervasiveness sufficient to create a hostile environment." *Sidlo v. Millercoors, LLC*, 718 F. App'x 718, 728 (10th Cir. 2018) (unpublished).

question of fact and thus particularly unsuited for resolution on a motion for judgment as a matter of law." *PVNF*, 487 F.3d at 798 (citation omitted).

Plaintiff has failed to "produce evidence from which a rational jury could infer that she was targeted for harassment because of her … race[ ] or national origin." *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1327 (10th Cir. 2004). The incidents she alleges—Ms. Silva's raising her voice and then issuing the January 29, 2016 reprimand letter; Ms. Silva's nicer treatment of Navajo employees and calling one employee "Sunshine"; the "witching" comment; accusations of micromanaging; building a wall, and other purported incidents—do not rise to the level of conduct that the Tenth Circuit has held creates a genuine issue of material fact as to severity or pervasiveness of race- or national origin-based harassment. *See, e.g., Ford*, 45 F.4th at 1233-35 (holding that multiple and continual racial stereotyping comments and calling the plaintiff "black bitch" and the use of the n-word, along with the employer's poor response in addressing the plaintiff's complaints, was sufficient evidence for the jury to decide whether the plaintiff was subjected to a racially hostile work environment); *Hernandez*, 684 F.3d at 958 (holding that at least a dozen "racially offensive comments and jokes" made over fourteen months about the plaintiff and her family and the plaintiff's "prompt[ ] and frequent[ ]" complaints to supervisors about those comments was sufficient evidence to survive summary judgment); *Herrera*, 474 F.3d at 680-83 (holding that racial harassment spanning four years, including racist comments about the plaintiff's ethnicity that were made every two to three days, raised a jury question about whether the plaintiff was subjected to pervasive race-based hostility.)

In comparison, Plaintiff's facts are more analogous to Tenth Circuit decisions concluding that the alleged actions failed to support a claim for a hostile work environment, even though some of these cases arguably involved more egregious conduct than the case at bar. *See, e.g.*, *Payan v.*

*United Parcel Serv.*, 905 F.3d 1162, 1171–72 (10th Cir. 2018) (evidence of a supervisor's "anger and aggression," comments that the plaintiff was a liar, questions about the plaintiff's out-of-work appointments, "grilling" of the plaintiff, and declarations from coworkers that the supervisor was abusive toward the plaintiff was insufficient because the supervisor's conduct was not "due to a racial animus" nor was the conduct sufficiently severe or pervasive); *Sidlo*, 718 F. App'x at 728–29 (employer's statement that he would "not tolerate any foreigner bullshit" was a "stray, isolated comment[ ] [that] f[ell] far short of the 'steady barrage' required for a hostile environment claim") (internal quotation marks omitted); *Morris*, 666 F.3d at 665-66 (demeaning comments such as "get your ass in gear" or "get someone in here who knows what they are doing," yelling, unwanted physical contact, and throwing things, was insufficient evidence of severe or pervasive hostility); *Anderson*, 265 F. App'x at 707 (school principal's comment that he was "glad to have African American teacher 'as a minority, but not as a teacher,'" was insufficient evidence to support host work environment claim under the totality of the circumstances); *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (two disparaging racial comments did meet the standard of "a steady barrage of opprobrious ... comments" required to support a hostile work environment claim); *Dunlap v. Kansas Dep't of Health & Env't*, 127 F. App'x 433, 436 (10th Cir. 2005) (supervisor's mocking of plaintiff's accent was clearly based on national origin, but the mocking comments were not so severe or pervasive to constitute bias; other evidence, such as denying the plaintiff's request for leave time and reducing the plaintiff's duties, were "not probative of forbidden bias.")

In summary, Plaintiff fails to show either that the incidents she complains of were due to a racial animus or that those incidents were sufficiently severe or pervasive to constitute a hostile work environment. Summary judgment is granted to the Secretary on Count II of Plaintiff's complaint.

## Conclusion

The Court grants the entirety of the Secretary's motion for summary judgment on Plaintiff's Title VII claims. Plaintiff's evidence does not support a disparate treatment claim (Count I) because Plaintiff suffered from no adverse employment action. Plaintiff's evidence fails to support a hostile work environment claim (Count II) because Plaintiff has not shown racial hostility or severe or pervasive bias. As no remaining claims exist in the case, this action is dismissed in its entirety. The Court will enter a separate final judgment under Federal Rule of Evidence Rule 58 contemporaneously with the entry of this Memorandum Opinion and Order.


IT IS THEREFORE ORDERED that Department of Health and Human Services Secretary Xavier Becerra's Motion for Summary Judgment (**Doc. 28**) is GRANTED.

IT IS SO ORDERED.


_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE